**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY RULLAN | Civil Action No. 19-5303 (KMW) |
| Petitioner, | |
| v. | OPINION |
| STATE OF NEW JERSEY, et al., | |
| Respondents. | |

WILLIAMS, DISTRICT JUDGE

 Petitioner Anthony Rullan ("Petitioner") is a state prisoner confined at South Woods State Prison in Bridgeton, New Jersey. He is proceeding *pro se* with a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 1, Petition). For the reasons expressed below, the Court denies the Petition and also denies a certificate of appealability.

## I. BACKGROUND[1]

 Petitioner was convicted in state court of second-degree sexual assault, second degree endangering the welfare of a child, and offensive touching. The New Jersey Superior Court, Appellate Division provided the following factual summary of the proofs of trial:

> [Petitioner] was indicted for abusing his two daughters, Ann, born in 1986, and Alice, born in 1990.[2]
>
> . . .
>
> Ann, who was twenty-five years old when she testified, recalls that, between the age of eight and ten, she was lying naked on a couch in the living room when [Petitioner] got on the couch with his pants down and rubbed his penis

---

[1] The factual background is taken from the record submitted by the parties; the facts relevant to the individual claims for relief are discussed in the analysis section of the Opinion.

[2] The state court used fictitious names for the victims and their family members.

against her vagina. She also stated that at some point during the incident she became aware that her brother, Tom, was looking through the window.

After this incident "everywhere and anywhere was the perfect chance for sex [with Petitioner]." The sexual acts consisted of "the rubbing . . . standing bottomless, you know; spreading my legs; him either touching me, you know, or not touching me;" and sucking her breasts. At times, [Petitioner] did not touch Ann but masturbated while looking at her. At some point in time, [Petitioner] began to have anal sex with Ann as well. [Petitioner] never had vaginal intercourse with her because her mother regularly checked Ann to make sure she was still a virgin.

While Ann was in high school, [Petitioner] ran a janitorial business that cleaned movie theaters after hours. Ann and Tom helped [Petitioner] clean the theaters, and on multiple occasions [Petitioner] and Ann took breaks from their chores to engage in sexual relations. Tom either continued cleaning or acted as the lookout. In addition to having sex in their home and in the theaters, Ann and [Petitioner] also had sex in cars. When they had sex at home, it was Tom's job to keep others away including Alice, Ann's younger sister, who reported anything that was amiss to their mother.

When she was ten years old Ann told her mother about the abuse. Her mother "flipped out" and dragged [Petitioner] out of bed with a knife and forced him to take her and Ann to the hospital. On the way to the hospital, her mother jumped out of the car and walked around an empty parking lot. [Petitioner] told Ann to recant and she complied.

Thereafter, Ann's mother asked her daily if [Petitioner] was abusing her, but Ann always denied the abuse was still occurring. Ann also told representatives from the Division of Youth and Family Services (DYFS) that her father was not abusing her, although she did report that her mother physically beat her and routinely examined her to determine if she were still a virgin.

When Ann was twenty-three and Alice nineteen years of age, Alice told Ann that [Petitioner] had sexually abused her. As a result of this disclosure Ann resolved to reveal her own abuse by [Petitioner]. Both sisters reported [Petitioner's] sexual abuse to the police in June 2009.

Alice testified that [Petitioner] and Ann had a relationship that was more like a married couple. Alice observed them hold hands, kiss "like a making-out kiss," and disappear into the bedroom. When they went into a bedroom Alice surmised they were on a bed because, when she looked under the door, she could not see their feet on the floor.

2

Alice stated, that as a young child, her father ignored her but after she turned twelve he began to sexually abuse her. The first time her father inappropriately touched her occurred when she was passing her father on the stairs. [Petitioner] "took his hand and rubbed it up my skirt." Thereafter, [Petitioner] asked her to wear skirts or dresses and "used to feel up on me."

At another time [Petitioner] called Alice into a room and put her on top of him. He pulled his penis out of his pants, pushed her underwear to the side, and "started rubbing on me." [Petitioner] pushed her away because Alice exuded discomfort over his conduct. Alice did not tell anyone about her father's conduct until she was approximately eighteen years old. At that time, she confided in Ann about the abuse and together they went to the police.

Tom testified that he saw his father having sex with Ann and was the "lookout" on countless occasions. The first time he saw them engaging in sex was when he looked through a window and saw his father on top of Ann, who was naked. His father saw Tom at the window and later asked him if he had "see[n] anything" and that he was "going to get beat if [he] did see something." On occasion Tom protested being a lookout, but his father responded by beating him.

*State v. A.R.*, No. A-3286-11T1, 2015 WL 5446690, at *1-2 (N.J. Super Ct. App. Div. Sept. 14, 2015.)

Petitioner was indicted and charged with first degree aggravated sexual assault, N.J.S.A. § 2C:14-2a(1) (count one); first degree aggravated sexual assault, N.J.S.A. § 2C:14-2a(2)(c) (count two); second degree endangering the welfare of a child, N.J.S.A. § 2C:24-4a (counts three and six); second degree sexual assault, N.J.S.A. § 2C:14-2b (counts four and five); and third degree witness tampering, N.J.S.A. § 2C:28-5a(1) (count seven).[3] (*See* ECF No. 11-2, at 1-3.)[4] A jury convicted Petitioner of two counts of second degree endangering the welfare of a child and two counsel of second-degree sexual assault (counts three through six). *See A.R.*, 2015 WL 5446690, at *1. The jury acquitted Petitioner of first degree aggravated sexual assault (counts one and two),

---

[3] The state dismissed count seven before trial. *See A.R.*, 2015 WL 5446690, at *1.
[4] Pin cites to ECF No. 11-1 through 11-27 are to the pagination automatically generated by the CM/ECF.

however, it convicted Petitioner of the lesser included offense of offensive touching. *See id.* The court sentenced Petitioner to an aggregate term of twenty years imprisonment, subject to an eighty-five percent parole ineligibility period under the No Early Release Act, N.J.S.A. 2C:43-7.2, and three years of parole supervision. *See id.*

Petitioner filed a counseled Notice of Appeal with the Appellate Division raising the following claims:

1. THE TRIAL COURT ERRED IN DENYING A.R.'S SEVERANCE MOTION BECAUSE THERE WAS NO VALID REASON FOR JOINING THE COUNTS PERTAINING TO ANN WITH THE COUNTS PERTAINING TO ALICE AND JOINDER SERVED ONLY TO IMPERMISSIBLY SUGGEST THAT DEFENDANT HAD A PROPENSITY TO COMMIT SEXUAL ASSAULT AND TO IMPROPERLY BOLSTER THE TESTIMONY OF EACH VICTIM. THE TRIAL COURT ALSO ERRED BY FAILING TO ISSUE AN INSTRUCTION LIMITING THE JURY FROM USING THE JOINED OFFENSES FOR THESE IMPERMISSBILE PURPOSES.

2. REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT ERRONEOUSLY PERMITTED THE STATE TO ELICIT INADMISSIBLE HEARSAY IN VIOLATION OF A.R.'S RIGHTS TO CONFRONTATION AND A FAIR TRIAL.

   A. The Trial Court Erred In Permitting The State to Bolster Ann's Testimony With An Out-Of-Court Statement She Allegedly Made To Her Mother When She Was Ten Years Old.

   B. Trial Court Committed Plain Error By Allowing The Prosecutor To Introduce Damaging Inferential Hearsay In Violation Of A.R.'s Rights to Confrontation And A Fair Trial.

   C. The Trial Court Erred In Allowing The State To Bolster The Credibility Of Tom's Testimony By Eliciting From Tom That He Reported The Abuse To A Bridgeton Detective In 2004 and 2005, And To A Doctor.

   D. The Trial Court Erred In Permitting Ann's Testimony That It Was "Common Knowledge" That "Everybody In The House" "Knew" That "Something Was Going On" Between Her And A.R., And That It Was Alice's "Job" To "Report" Suspicious Activity To Their Mother.

3.  THE TRIAL COURT'S FAILURE TO READ THE MODEL CHARGE ON PRIOR CONTRADICTORY STATEMENTS AND DELIVERY OF A DEFICIENT CHARGE ON LACK OF FRESH COMPLAINT REQUIRES REVERSAL.

4.  THE TRIAL WAS SO INFESTED WITH ERROR THAT EVEN IF EACH INDIVIDUAL ERROR DOES NOT WARRANT REVERSAL, THE AGGREGATE OF THE ERRORS REQUIRES A NEW TRIAL.

5.  THIS CASE MUST BE REMANDED FOR RESENTENCING BECAUSE THE IMPOSITION OF CONSECUTIVE MAXIMUM SENTENCES WAS NOT SUPPORTED BY THE RECORD AND THE COURT FAILED TO CONSIDER MITIGATING EVIDENCE SUPPORTED IN THE RECORD WHEN RECONSIDERING A.R.'S SENTENCE.

(ECF No. 11-4, at 2-4.)  On September 14, 2015, the Superior Court of New Jersey, Appellate Division, dismissed Petitioner's claims as meritless. *See A.R.*, 2015 WL 5446690. The New Jersey Supreme Court subsequently denied Petitioner's petition for certification. *State v. A.R.*, 129 A.3d 329 (2016).

Petitioner filed a *pro se* post-conviction relief ("PCR") petition raising a multitude of claims.  (ECF No. 11-9, at 9-12.)  Petitioner reiterated his direct appeal claims. Petitioner also raised the following nine claims of trial counsel ineffective assistance:[5]

1.  Trial counsel was inexperienced in these cases;

2.  Trial counsel failed to introduce into evidence statements from Ann, Alice and Tom of his innocence and doctor's reports;

3.  Trial counsel failed to tell the jury there was a previous trial involving Ann and Tom;

4.  Trial counsel failed to tell the jury that Ann had testified on Petitioner's behalf in his previous trial;

5.  Trial counsel failed to tell the jury Tom had testified against Petitioner in his previous trial, but then came forward saying he lied and was under his mother's control;

---

[5] The Court has summarized these claims.

6. Trial counsel failed to tell the jury Alice had knowledge Petitioner was on trial in 2007, and did not come report the abuse and gave statement of Petitioner's innocence in the past;

7. Trial counsel failed to ask Ann if she was on medication for her P.T.S.D. in 2009 during the time of the complaint;

8. Trial counsel made comments during opening statements that "many of you jurors, just as soon as they heard the charges they were out the door because of the nature of the charges which he had no right [] saying because the judge had already spoke to the jury that the missing jurors had nothing to do with the case";

9. Trial counsel during opening statements spoke of Petitioner as guilty and ok for [the jury] to convict him.

(*See id.*) On July 30, 2016, petitioner filed a counseled PCR petition arguing only that trial counsel was ineffective for failing to call witnesses Diana Harwed and Wilfreido Reyes. (ECF No. 11-10, at 16-17.) Counsel also attached *pro se* documents that Petitioner had sent to counsel. (*See* ECF Nos. 11-11 at 31 and 11-12.) In these *pro se* documents, Petitioner appears to argue that trial counsel was ineffective for not telling the jury that Petitioner was investigated in 2002-2003 regarding "V.C." and "all my five children" and the investigation was dismissed after his children gave statements regarding his innocence. (*See* ECF No. 11-12.) However, the remainder of the *pro se* allegations appear to be irrelevant to this matter. Most of the claims asserted in the *pro se* documents appear to be claims regarding a 2007 trial referenced by Petitioner. These claims refer to a "Judge Fisher", defense attorney "Shapiro", and victim "V.C." and it does not appear that those individuals were parties in this matter before the Court. (*See* ECF No. 11-12, at 12-24.)

On September 23, 2016, the PCR court denied his petition. (*See* ECF No. 11-15; *see also* ECF No. 11-36, PCR Decision Transcript.) Petitioner appealed, and the Appellate Division affirmed the denial. *State v. A.R.*, No. A-2215-16T3, 2018 WL 1192699 (N.J. Super Ct. App. Div.

March 28, 2018.)  The New Jersey Supreme Court then denied his petition for certification.  *State v. A.R.*, 194 A.3d 92 (2018).

Petitioner filed his instant habeas petition on February 6, 2019.  (ECF No. 1.)  Petitioner asserts eleven grounds for relief.[6]  Respondents filed an answer.  (ECF No. 11.)  Petitioner filed a reply.  (ECF No. 15.)

## II. STANDARDS OF REVIEW

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  District courts are required to give great deference to the determinations of the state trial and appellate courts.  *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[6] Petitioner lists all eleven grounds for relief under Ground One through Ground Four of the § 2254 Petition for Writ of Habeas Corpus form.  (*See generally* ECF No. 1.)  The Court will address the eleven grounds for relief as separate claims and will address the claims out of order for clarity purposes.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

### B. Ineffective Assistance of Counsel Standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006)

9

(citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below

*Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

## III. ANALYSIS

### A. Ground Four: Failure to Call Witnesses[7]

Petitioner's fourth ground for relief alleges that the PCR Court erred in denying his PCR petition when the court "knew there were witnesses which were requested and were not called for the 2011 trial." (ECF No. 1, at 8.) On collateral appeal, Petitioner argued to the PCR court that trial counsel was ineffective for failing to call Diana Hardwed and Wilfreido Reyes. (ECF No. 11-10, at 16-17.)

The PCR court denied Petitioner's claim that trial counsel was ineffective for failing to call witnesses Diana Hardwed, an Atlantic County DYFS caseworker, and Wilfreido Reyes, who Petitioner claimed was a very close family friend, finding Petitioner failed to establish a prima facie showing of ineffective assistance of counsel. (*See* ECF No. 11-39, PCR Hearing Transcript, at 14:6-25.) The PCR court noted that Petitioner failed to present evidence showing what the witnesses would have testified to and how their testimony would have changed the result of Petitioner's trial. (*Id.*)

---

[7] As noted above, the Court will be addressing Petitioner's claims out of order for clarity purposes.

The Appellate Division affirmed the PCR court ruling. *See A.R.*, 2018 WL 1192699. The Appellate Division first explained that PCR counsel represented that Petitioner said Reyes would have told the jury that Petitioner did not sexually assault his daughters, and Hardwed would have testified that she would have taken the children away in 2002 if it had been reported Petitioner committed any of the alleged acts. *Id.*, at * 2. The Appellate Division reasoned as follows:

> [Petitioner] claims his counsel was ineffective by failing to call Hardwed and Reyes as witnesses at trial. Our Supreme Court has observed that "[d]etermining which witnesses" to call to testify "is one of the most difficult strategic decisions that any trial attorney must confront." *State v. Arthur*, 184 N.J. 307, 320 (2005). "[A] defense attorney's decision concerning which witnesses to call to the stand is 'an art,' and a court's review of such a decision should be 'highly deferential[.]'" *Id.* at 321 (quoting *Strickland*, 466 U.S. at 689, 693).

> [Petitioner] fails to demonstrate his trial counsel was ineffective by failing to call Hardwed and Reyes as witnesses at trial. His claim is founded solely on the bald and conclusory assertion they would have provided testimony that would have changed the outcome of his trial. The assertion is unsupported by an affidavit or certification based on personal knowledge establishing what would have been revealed if they had testified. *See* [*State v. Petrozelli*, 351 N.J. Super. 14, 23 (2002)]; *see also State v. Bey*, 161 N.J. 233, 262 (1999) (finding claim based on defendant's speculation is insufficient for grant of post-conviction relief).

> [Petitioner] also failed to present any facts supported by an affidavit or certification establishing a reasonable probability that had the witnesses testified at trial, the result would have been different. *See Strickland*, 466 U.S. at 694; *see, e.g., Bey*, 161 N.J. at 262 (finding trial counsel is not ineffective by failing to call witnesses whose testimony would not have changed the outcome). Even accepting [Petitioner's] supported conclusory assertions, [Petitioner] failed to demonstrate any probability the putative testimony of the witnesses would have changed the trial outcome. [Petitioner] alleges Hardwed would have established that DYFS's involvement and investigations between 1994 and 2003 revealed allegations against [Petitioner] were unsubstantiated, and that Ann did not report [Petitioner's] sexual assaults during that time. Such testimony would not have changed the result of [Petitioner's] trial, however, because Ann testified she spoke with different DYFS representatives during the

years [Petitioner] sexually assaulted her, never disclosed [Petitioner's] actions, and told a DYFS caseworker that [Petitioner] did not sexually assault her.

[Petitioner] argues that if Reyes testified, he would have established the children's mother was "abusive to Ann and was known to make false sexual allegations against [Petitioner] involving Ann." Ann testified her mother was physically and mentally abusive toward her during the years [Petitioner] sexually assaulted her, and therefore any testimony from Reyes concerning the mother's abuse would have added little to Ann's testimony, which was based on Ann's personal knowledge. Also, [Petitioner] does not claim Reyes had personal knowledge of the mother's purported false allegations that [Petitioner] was sexually assaulting Ann and, thus, Reyes would have been unable to testify to such alleged facts at trial.

A defendant must establish both prongs of the *Strickland* standard in order to obtain a reversal of the challenged conviction. *Strickland*, 466 U.S. at 687; *State v. Nash*, 212 N.J. 518, 542 (2013); [*State v. Fritz*, 105 N.J. 42, 52 (1987)]. As the PCR court aptly determined here, [Petitioner] failed to sustain his burden of establishing a prima facie claim of ineffective assistance of counsel under both prongs of the *Strickland* standard. The court correctly denied [Petitioner's] PCR petition.

*A.R.*, 2018 WL 1192699, at * 4-5.

Under federal law, a failure to investigate potentially exculpatory evidence or witnesses may form the basis of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 690-91; *see also Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016). To successfully establish this claim, a petitioner "must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained ... and whether such information, assuming admissibility in court, would have produced a different result." *See Brown*, 2016 WL 1732377, at *5 (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)). The petitioner must also still demonstrate he suffered prejudice. *See Strickland*, 466 U.S. at 690-91. But, where a petitioner merely speculates as to what a witness might have said if interviewed by counsel and does not

present sworn testimony from that witness, a petitioner will not be able to establish the prejudice prong of *Strickland. See Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (citing *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989)).

Petitioner does not specify what these potential witnesses would have testified to. Instead, Petitioner provides what appears to be a 2011 *pro se* brief where Petitioner indicated Hardwed[8] would have testified to "state documents and doctor's reports and statement's given by [his] accusers, which would [have] contradicted their 2011 trial testimony" and Reyes would have testified that the victims' mother "always made false sexual assault allegations between [Ann] and [Petitioner]." (*See* ECF No. 1-1 at 5.) Petitioner has not provided any sworn testimony, affidavit, or certification from either witness. (*See* ECF No. 1.) Petitioner's mere speculation regarding the potential witnesses' testimony is insufficient to establish prejudice. *See Duncan*, 256 F.3d at 201-02. Petitioner has also failed to show any potential information from these witnesses would have produced a different result at Petitioner's trial. *See Brown*, 2016 WL 1732377, at *5. Petitioner cannot demonstrate the state court's adjudication was an unreasonable application of clearly established federal law. Thus, Petitioner's claim is denied.[9]

---

[8] Plaintiff spells the name as Howard. The Court understands this is the same individual.

[9] The Court notes that Petitioner did not indicate which witnesses he is referring to in his Petition. A review of his 2011 briefing, attached to his Petition, shows that in addition to Hardwed and Reyes, Petitioner named three additional witnesses trial counsel allegedly failed to call. (*See* ECF No. 1-1, at 5.) Petitioner names: 1) "medical doctor" who would have testified Ann's medication had the effect of confusing her thoughts; 2) Louis Charles Shapiro, Petitioner's 2007 trial defense attorney, whose "testimony would have contradicted all [of his] three accusers"; and 3) Investigator Bill Cassidy, who would have testified "that one of [the witnesses] had requested to be placed in the witness protection program because of [Petitioner's] wi[fe's] anger because [the witness] was to reveal [Petitioner's wife] was forcing him to testify against Petitioner." (*Id.*) It is unclear if Petitioner is attempting to include these three witnesses in his claim here, however, any claim regarding those witnesses fails for similar reasons as witnesses Hardwed and Reyes. Petitioner makes only conclusory arguments regarding what these alleged witnesses would have testified to and he provides no sworn testimony or affidavit from any of the witnesses. Again, Petitioner's conclusory assertion regarding witness testimony is insufficient to establish prejudice. *See Duncan*, 256 F.3d at 201-02. As Petitioner fails to establish prejudice as required by *Strickland*, any potential claim regarding these witnesses is denied. *See Strickland*, 466 U.S. at 690-91.

**B.  Ground Seven, Eight, Nine, and Ten: Trial Court Error, Evidentiary Rulings**

In his seventh, eighth, ninth and tenth grounds for relief, Petitioner argues that the trial court erred in admitting certain evidence at trial. (*See* ECF No. 1, at 9 & 11.)  These claims will be addressed in turn.

Generally, the admissibility of evidence is a question of state law which is not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 32, 67-68 (1991); *see also Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence.")  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983).  If, however, a petitioner can demonstrate that the admission of the evidence denied him Due Process by depriving him of the "fundamental elements of fairness in [his] criminal trial," then his claim may be cognizable on habeas review. *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)).  A petitioner's trial "need not have been perfect," but it must have been fair. *United States v. Hastin*, 461 U.S. 499, 508 (1983).  Thus, a petitioner can only succeed in challenging a state court's evidentiary ruling by showing that the ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).  The category of infractions that violate fundamental fairness has been defined by the Supreme Court "very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited application." *Medina v. California*, 505 U.S. 437, 443 (1992).

### 1. *Hearsay-Common Knowledge*

Petitioner's seventh ground for relief alleges the trial court erred in finding "[Ann's] opinion as to what the non-testifying member[s] of her family 'knew' was admissible under N.J.R.E 701." (ECF No. 1, at 9.) Although Petitioner fails to elaborate on what testimony he is claiming was inappropriately admitted at trial, it appears he is attempting raise an evidentiary claim that was raised on direct appeal. On direct appeal to the Appellate Division, Petitioner argued "the trial court erred in permitting Ann's testimony that it was 'common knowledge' that 'everybody in the house' 'knew' that 'something was going on' between her and A.R., and that it was Alice's 'job' to 'report' suspicious activity to their mother." (ECF No. 11-4, at 49.)

On direct examination, Ann testified as follows:

Q.   Okay.  And, who would be home or would there be anyone home when this would occur at your house?

A.   My sister and my brother were home.  My brother's job was to keep my sister away, also lookout, watch driveway, make sure nobody's coming.

Q.   When you say your sister, who are you referring to?

A.   [Alice.]

Q.   Why would his job be to keep your sister away?

A.   Because my sister was supposed to report what she sees.  I mean it was common knowledge that everybody in the house already knew that there was something going on between my dad an[d] myself, and it was her job to investigate, to find out, to report back to my mom.

(ECF No. 11-33, N.T. 9/20/11, at 63:24 to 64:12.)

The Appellate Division denied this claim on direct appeal, finding Petitioner's claim was "without sufficient merit to warrant discussion in a written opinion." *See A.R.*, 2015 WL 5446690, at *8. As explained above, any argument that the state court erred in permitting Ann to provide

this testimony, is not proper for federal habeas review.  *See Wilson v. Vaughn*, 533 F.3d 208, 213

(3d Cir. 2008) ("[a]dmissibility of evidence is a state law issue.") (citing *Estelle*, 502 U.S. at 72).

Petitioner can only show his due process rights were violated if the evidentiary decision was so

arbitrary and prejudicial that is rendered the trial fundamentally unfair.  *See Romano*, 512 U.S. at

12–13.

Petitioner fails to demonstrate that Ann's testimony rendered the trial fundamentally unfair. There

was ample testimony that multiple family members in the household were aware of Petitioner's

abuse of Ann.  Ann testified that Petitioner sexually abused her.  (See generally ECF No. 11-33,

N.T. 9/20/11, at 52:2 to 74:3.)  Ann testified that Tom, her brother, saw her and Petitioner "having

sex" and was the "lookout" for them. (*Id.*, at 52:4-5, 61:21-25.)  Ann also testified that when she

was ten years old, she told her mother about the abuse.  (*Id.*, at 67:9-14.) Tom testified that he was

aware of the sexual abuse and was often the lookout for them.  (*Id.*, at 179:4 to 181:7 & 184:16 to

185:18.)  Alice testified that she witnessed Petitioner and Ann "making out."  (*Id.*, at 152:18 to

152:21.)  The evidenced introduced at trial showed that household members did know about that

abuse.  Based on all the evidence introduced at trial, the Court does not find that any possible

adverse effect from Ann's testimony regarding what the household members "knew" rendered the

trial fundamentally unfair.  *Romano*, 512 U.S. at 12–13.  Because Petitioner fails to demonstrate

that his constitutional rights have been violated, this claim for habeas relief is denied.

### 2. *Hearsay- Fresh Complaint*

Petitioner argues in his eighth claim that the trial court erred in admitting fresh complaint

evidence without a limiting instruction.  (*See* ECF No. 1, at 11.)  Petitioner fails to elaborate on

which fresh complaint evidence he is referring to, however, it appears that Petitioner is attempting

to raise a claim that was asserted on direct appeal.  On direct appeal, Petitioner argued the trial

court erred in permitting the state to bolster Ann's credibility with an out-of-court statement she allegedly made to her mother when she was ten years old. (*See* ECF No. 11-4, at 36-40.)

At Petitioner's trial, during the direct examination of Ann, the prosecutor asked Ann if she ever told her mother about what her father was doing to her. (*See* ECF No. 11-33, N.T. 9/20/11, at 65:3-4.) Defense counsel objected, arguing the testimony was inadmissible as a fresh complaint because Petitioner's mother was not a witness in the trial. (*Id.*, at 65:6-24.) The prosecution argued that the testimony was not a fresh complaint because Ann's testimony pertained to her own knowledge of being brought to the hospital by her mother. (*Id.*, at 66:4-8.) The prosecution further argued that a fresh complaint would be if the state was attempting to admit the mother's testimony regarding what Ann told her, not Ann's own testimony. (*Id.*, at 66:11-13.) The trial court allowed the testimony, finding it did not see how it was fresh complaint issue. (*Id.*, at 66:9-10.)

Ann testified that when she was ten years old, she told her mother about the abuse. (*Id.*, at 67:9-14.) She testified her mother "flipped out" and pulled a knife on Petitioner. (*Id.*, at 67:23 to 68:8.) Ann also testified that her mother and Petitioner drove Ann to the hospital, where Ann changed her story. (*Id.*, at 68:15 to 69:8.)

Under New Jersey state law, hearsay is an out-of-court statement admitted "to prove the truth of the matter asserted." N.J.R.E. 801(c). Subject to limited exceptions, hearsay is inadmissible. N.J.R.E. 802. Ordinarily, a third party's testimony about a victim's out-of-court description of an alleged sexual assault is inadmissible hearsay evidence. *Id.* However, the fresh-complaint doctrine is a common law exception to this rule that "allows witnesses in a criminal trial to testify to a victim's complaint of sexual assault." *State v. Hill*, 578 A.2d 370, 371 (1990). The purpose of the doctrine is to "allow[ ] the admission of evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or

delay indicates that the charge is fabricated." *State v. R.K.*, 106 A.3d 1224, 1230-1231 (2015) (citing *Hill*, 578 A.2d at 377).

The Appellate Division denied this claim, finding Petitioner's "arguments are without sufficient merit to warrant discussion in a written opinion." *See A.R.*, 2015 WL 5446690, at *8. The testimony that Ann told her mother about the abuse and her mother took her to the hospital was not hearsay admitted by a third-party witness for the truth of the matter. Rather, Ann testified herself as to what she told her mother and how her mother reacted to that information. Additionally, Ann only testified that she witnessed her mother pull a knife on Petitioner and that her mother took Ann to the hospital. Ann did not testify to any out-of-court statements made by her mother. The state court overruled defense counsel's objection to this testimony, finding the testimony was not a "fresh complaint." Accordingly, Petitioner is unable to demonstrate that the admission of Ann's testimony was so prejudicial as to render his trial fundamentally unfair. *See Scott*, 2013 WL 4537651, at *9. Petitioner is not entitled to relief on this claim.

### 3. *Inferential Hearsay*

Petitioner argues in his ninth ground for relief that "the note the jury sent to the court during [] deliberation renders untenable the state's contention that the jury was not affected by the improper[ly] admitted evidence regarding Sergeant O'Neill's 2004 interview with [Ann] which gave rise to the inescapable inference that O'Neill had knowledge from a non-testifying source that [Petitioner] sexually abused Ann." (ECF No. 1, at 11.) Based on a review of the state court record, it appears Petitioner is attempting to assert his direct appeal claim that the trial court committed plain error by allowing the prosecutor to introduce damaging inferential hearsay in violation of Petitioner's rights to confrontation and a fair trial. (*See* ECF No. 11-4, at 40-46.)

19

As explained above, Ann testified at Petitioner's trial that she told her mother about the abuse when she was ten, the prosecutor then asked the following:

Q.   After that point did you ever attempt to tell anyone again?

A.   No.  Never.

Q.   And, at some point in time, were you interviewed back in 2004 by a detective from Vineland?

A.   Yes.

Q.   And, did he confront you with whether or not your father has ever touched you?

A.   Yes.

Q.   Okay.  And, what happened during that interview?

A.   I wouldn't tell him.  I couldn't.

Q.   Did you - - did you become emotional?

A.   Very.

Q.   And, do you remember anything else you said to the detective that day in regards to - -

A.   Asked me if I was being completely honest, and I said I was being as honest as I could be.  And I asked him to leave.

Q.   And he let you leave.

A.   Yeah.

(ECF No. 11-33, N.T. 9/20/11, at 69:19 to 70:14.)  Sergeant Steven O'Neill subsequently testified as follows:

Q.   And, do you recall if you were working back in - - back on February 17, 2004?

A.   Yes.

Q.    And, on that occasion, did you have an opportunity to meet with an individual by the name of [Ann] Rullan?

A.    Yes, I did.

Q.    And, did you interview Ms. Rullan?

A.    Yes, I did.

Q.    Now, I'm not going to ask you what she stated to you during that interview, but do you recall when speaking to her what her demeanor was like?

A.    She was very emotionally upset, to the point I would say uncontrollable at times.

Q.    Did you need to take breaks during the interview?

A.    Yes, I did.  She took a break, and I had to provide her with tissues, and also I gave her some water.

Q.    Okay, and, the individual you were speaking to her about, was that her father?

A.    That is correct.

Q.    And, how was she with answering your questions?

A.    She - - in between her being very emotional, she had a very difficult time talking about it.

Q.    Okay.  And, how did the interview end?

A.    She - - she had asked, after one of her breaks, she asked if she can go home, and she didn't want to discuss it any further.

(*Id.*, at 137:6 to 138:10.)  The jury asked the court during deliberations: "What year was [Ann] interviewed by O'Neill and for what reason?"  (ECF No. 11-35, Tr. 9/22/11, at 14:23-24.)  The court informed the jury that the interview took place in 2004 and there was no testimony in the record as to the reason for that interview.  (*Id.*, at 22:12-19.)

Petitioner argued on direct appeal that the testimony of Ann and Sergeant O'Neill "gave rise to the inescapable inference that a non-testifying witness had provided O'Neill with information, which prompted him to suspect [Petitioner] had sexually abused Ann" in violation of *State v. Branch*, 182 N.J. 338 (2005). (*See* ECF No. 11-4, at 42-46.) The Appellate Division denied this claim, finding Petitioner's "remaining arguments are without sufficient merit to warrant discussion in a written opinion." *See A.R.*, 2015 WL 5446690, at *8.

Under New Jersey state law, "the Confrontation Clause and the hearsay rule are violated when, at trial, a police officer conveys, directly or by inference, information from a non-testifying declarant to incriminate the defendants in the crime charged." *Branch*, 182 N.J. at 359 (citing *State v. Bankston*, 63 N.J. 263, 268-60 (1973)). Accordingly, "[w]hen the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay." *Bankston*, 63 N.J. at 271. The New Jersey Supreme Court noted that a police officer can explain "the reason he approached a suspect or went to the scene of the crime by stating that he did so 'upon information received[ ]' . . . to show that the officer was not acting in an arbitrary manner or to explain his subsequent conduct." *Id.* at 268. However, "when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused[,] the testimony violates the hearsay rule ... [and his] Sixth Amendment right to be confronted by witnesses against him." *Id.* at 268–69.

The record shows that Sergeant O'Neill did not provide any testimony as to why he was interviewing Ann in 2004. Additionally, defense counsel asked Sergeant O'Neill on cross-examination if he was interviewing Ann in relation to some other crime, and the prosecution object and defense counsel withdrew the question. (ECF No. 11-33, N.T. 9/20/11, 141:18-24.) Sergeant

O'Neill did not offer any testimony that would indicate a non-testifying witness gave him any evidence of Petitioner's guilt. *See Bankston*, 63 N.J. at 271. Additionally, Tom testified that he reported the relationship between Ann and Petitioner to a Vineland Detective Lynn Wheling in 2004. (See ECF No. 11-33, N.T. 9/20/11, 187:9 to 188:21.) Sergeant O'Neill's testimony did not convey "directly or by inference" that non-testifying declarant incriminated defendant. *See Branch*, 182 N.J. at 350.

Even if the Sergeant O'Neill's testimony was impermissible hearsay, it was harmless error to admit it. Constitutional error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Factors that a federal court is to consider in determining whether a Confrontation Clause error was harmless "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Sergeant O'Neill's testimony was cumulative, as Ann had already testified that she was interviewed by O'Neill and was very emotional and unwilling to tell him anything. Additionally, defense counsel had the opportunity to cross-examine Sergeant O'Neill. Most importantly, there was ample evidence introduced at trial against Petitioner, including Ann and Alice's testimony that Petitioner sexually abused them and Tom's testimony that he witnessed the sexual abuse. Any inference that could have been made from Sergeant O'Neill's testimony was harmless.

The Appellate Court found this claim was without sufficient merit to warrant discussion and denied the claim. Petitioner has not shown that the states evidentiary ruling violated his constitutional right. Thus, Petitioner's claim is denied.

### 4. Hearsay- Bolstering Credibility

Petitioner's tenth ground for relief alleges that the "judge intentionally and deliberately set up [Petitioner] for failure by permitting the state to bolster the credibility of Tom's testimony. (ECF No. 1, at 11.) On direct appeal Petitioner argued "the trial court erred in allowing the state to bolster the credibility of Tom's testimony by eliciting from Tom that he reported the abuse he witnessed to a Bridgeton Detective in 2004 and 2005, and to a doctor." (ECF No. 11-4, at 46-49.)

The Appellate Division denied this claim, finding it was without arguable merit to warrant discussion in a written opinion. *See A.R.*, 2015 WL 5446690, at *8.

On direct examination, Tom testified that he reported Petitioner's sexual abuse of Ann to police in 2004 and 2005. (ECF No. 11-33, N.T. 9/20/11, at 187:9 to 189:11.) Tom also testified that he told a doctor at the New Jersey Cares Institute about the abuse. (*Id.*, at 189:15 to 190:2.)

Under New Jersey law, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). Tom was not testifying to a statement made by someone other than himself. Tom testified only to reports that he made. Moreover, Tom testified only that these reports were made, not to the specifics of the reports. This evidence does not qualify as hearsay.

Assuming arguendo, that this evidence was hearsay, Petitioner again fails to show the admission of the evidence was so arbitrary and prejudicial that is rendered the trial fundamentally unfair. *See Romano*, 512 U.S. at 12–13. As explained repeatedly throughout this Opinion, there was significant evidence offered against Petitioner, including eyewitness testimony. Petitioner has

failed to show that Tom's testimony that he reported the abuse in 2004 and 2005 rendered the trial fundamentally unfair. As such, this claim for habeas relief is denied.

### C. GROUNDS ONE, TWO, THREE, FIVE, SIX AND ELEVEN

Petitioner's remaining grounds for relief fail to specify which constitutional challenges he is making to his conviction. Petitioner also fails to assert any supporting facts for his remaining grounds for relief.

In his first ground for relief, Petitioner argues the "trial court judge negotiate[d] [Petitioner's] constitutional rights by not making sure the witnesses requested for the 2011 trial appearance [] attend[ed]. Witnesses were requested by [Petitioner] and was ignored." (ECF No. 1, at 6.) Petitioner fails to specify which witnesses he is referring to, how the trial court was made aware of said witnesses, and any ruling by the trial regarding these alleged witnesses.

Petitioner's second ground for relief submits the "trial court judge violated [Petitioner's] constitutional right by deliberately not allowing the trial jury to hear any information which was the [Petitioner's] defense. But instead limited the [Petitioner's] defense for the purpose of the judge and state's satisfaction to gain conviction." (*Id.*) Petitioner provides no facts regarding what information the trial court precluded Petitioner from presenting to the jury or what defense Petitioner was prevented from asserting.

The third ground for relief alleges the "N.J. Appellate Court has [] violated [Petitioner's] constitutional right's by [] having knowledge that [Petitioner] has presented evidence to Superior Court which would exonerate [Petitioner] but instead affirm." (*Id.*) In his fifth ground for relief, Petitioner appears to argue the PCR court erred in denying Petitioner an evidentiary hearing when "there was a briefing stating there [was] information which was not provided and allowed to be heard by the trial jury, which may ha[ve] in fact exonerate[d] [Petitioner]." (*Id.*, at 8.) The third

and fifth grounds for relief fail to provide the Court with any of the alleged facts that would "exonerate" Petitioner.

Petitioner alleges in his sixth ground for relief that the prosecutor "[in]appropriately [misled] defense counsel by providing false facts and was allowed by trial court judge to do so. []Trial court judge knew prosecutor was lying[,] which in our law that is [obstruction] of justice." (*Id.*, at 9.) Petitioner fails to support this claim with any facts to support his allegation that the prosecutor provided "false facts" or that the trial court was aware of such false information.

Finally, Petitioner's eleventh ground for relief argues "the trial court intentionally and deliberately set up [Petitioner] for failure by permitting the state to bolster the credibility of Alice's testimony." (*Id.*, at 11.) There is no information provided in the Petition regarding what evidence was offered by the state to bolster the credibility of Alice.

Federal habeas petitioners must satisfy heightened pleading standards, which include specifying all grounds for relief. *See* 28 U.S.C § 2254 Rule 2(c); *McFarland v. Scott*, 512 U.S. 849, 856 (1994). It is the burden of a habeas petitioner to articulate his allegations by setting forth facts to support them. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.1991). A court has a duty to liberally construe a petitioner's *pro se* filings. *Estelle*, 429 U.S. at 106. However, "bald assertions and conclusory allegations" do not provide a court with sufficient information to permit a proper assessment of habeas claims. *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987); *see Zettlemoyer*, 923 F.2d at 298 (A petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations ... [r]ather, he must set forth facts to support his contention."); *U.S. v. Thomas*, 221 F.3d 430, 437-38 (3d Cir. 2000) ("[V]ague and conclusory allegations

contained in a [habeas petition] may be disposed of without further investigation by the District Court.").

The Court has attempted to construe Petitioner's remaining grounds for relief by thoroughly reviewing the numerous documents that were submitted *pro se* and through counsel to the state courts on appeal.  While Petitioner repeatedly alleged on appeal in state court that information from a 2004 investigation and a 2007 trial should have been admitted at his 2011 trial, the Court is unable to specifically apply these numerous unclear state court arguments to any of his remaining habeas grounds for relief.  Plaintiff's remaining claims submit nothing more than bald assertions and conclusory arguments.  Therefore, Petitioner's grounds one, two, three, five, six and eleven are unreviewable and are dismissed.  *See Zettlemoyer*, 923 F.2d at 301 ("bald assertions and conclusory allegations do not provide sufficient ground" for further inquiry on habeas review).

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Thus, no certificate of appealability shall issue.

## IV.  CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.  An appropriate Order follows.

Dated:   January 26, 2022

**Hon. Karen M. Williams,**
**United States District Judge**